2013 VT 25

# State of Vermont v. Shaun L. Freeman

[70 A.3d 1008]

No. 11-342

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed March 29, 2013

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Joshua S. O'Hara*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant, who was given a twenty-year-to-life sentence following a plea agreement on assault charges, challenges in this automatic appeal two of the probation conditions that were attached to his plea agreement. We uphold one of the conditions but remand the case for the criminal division of the superior court to reexamine and to justify, revise, or strike the other condition consistent with the opinion set forth below.

¶ 2. In June 2010, defendant was charged with several criminal offenses — including burglary of an occupied dwelling, aggravated sexual assault, aggravated assault, aggravated domestic assault, and violation of an abuse-prevention order — based on an incident in which he broke into the house where his estranged wife was staying and assaulted her and the couple with whom she was staying. In October 2010, defendant entered into a plea agreement in which he agreed to plead guilty to one count of aggravated domestic assault, one count of aggravated sexual assault, and one count of aggravated assault with respect to his actions towards his wife and one of the other victims. He also agreed to plead no contest to one count of aggravated assault with respect to his actions towards the third victim. In exchange, the State agreed to

dismiss the other charges and to recommend an effective sentence of twenty years to life in prison.

¶ 3. The change-of-plea hearing was held on the same day that defendant and the State entered into the plea agreement. At the conclusion of the plea colloquy, the court accepted defendant's pleas, finding them to be knowing, voluntary, and factually based. The court ordered a presentence investigation (PSI) report and set the matter for sentencing. Before the sentencing hearing, defendant moved to withdraw his pleas on the ground that he had not understood that his minimum release date would exceed twenty years because of the Department of Corrections' classification system. Defendant withdrew his motion, however, after the parties agreed to change the original recommended sentence to an aggregate sentence of twenty years to life, all suspended except twenty years and probation.

¶ 4. In February 2011, the PSI report was filed with special conditions of probation appended to it. In March 2011, defendant filed comments and objections to the report, but did not mention the appended special probation conditions.

¶ 5. Defendant's sentencing hearing was held on March 22, 2011. At the beginning of the hearing, the court stated that it had reviewed the PSI report, a psycho-sexual evaluation of defendant, and defendant's comments and objections to the report and evaluation. The court stated that it did not need to address defendant's comments and objections because defendant did not object to the agreed-upon sentence. The court expressly noted that although the plea agreement did not mention any of the special probation conditions, those "recommended" conditions had been appended to the PSI report. The court stated: "I gather the parties at least implicitly agree those should be made special conditions of probation." The prosecutor agreed with that statement, and the probation officer who had authored the PSI report informed the court of changes to conditions not the subject of the instant appeal. Defendant and his attorney remained silent during this exchange and never commented on the probation conditions. Before defendant made his statement to the court, his attorney stated that "we are in agreement with the plea that has been — the sentencing recommendation that's been submitted to the Court."

¶ 6. At the conclusion of the hearing, defendant was sentenced in accordance with the plea agreement to twenty years to life, all

suspended except twenty years, and probation with numerous standard and special probation conditions, including the following two conditions that defendant challenges on direct appeal of his sentence:

> 38. You shall submit to, and pay for, periodic polygraph examinations at the direction of your PO or designee. These polygraph examinations will be used to determine your compliance with supervision and treatment requirements.
>
> . . . .
>
> 40. Def. shall reside/work where PO or designee approves. Def. shall not change residence/employment without prior permission of PO or designee.

¶ 7. This automatic appeal followed. On appeal, defendant requests that conditions 38 and 40 be struck based on the following claims of plain error: (1) condition 38 violates his constitutional due process rights because it requires him to agree to the admission of polygraph results at any future probation revocation proceeding; and (2) condition 40 is not reasonably related to his offenses and is overbroad and unduly restrictive in that it gives his probation officer complete autonomy to restrict his residence and work. The State responds that defendant waived any challenge to the probation conditions and thus cannot claim plain error in their imposition.

¶ 8. We first consider whether defendant has waived even a plain-error challenge to the conditions. Defendant acknowledges that he did not object to the challenged conditions but contends that imposition of the conditions amounts to plain error. The State argues that even a plain-error analysis is unavailable to defendant because he waived any challenge to the conditions by remaining silent when the court noted its assumption that the parties had "at least implicitly" agreed that the conditions appended to the PSI report "should be made special conditions of probation."

¶ 9. Our case law on waiver and whether it precludes a plain-error analysis is not entirely clear. "Our general rule is that waiver cannot be construed from silence; it requires proof of a voluntary and intentional relinquishment of a known and enforceable right." *State v. Baker*, 2010 VT 109, ¶¶ 11-12, 189 Vt. 543, 12 A.3d 545 (mem.) (quotations omitted) (concluding that defendant

did not waive his right to challenge legality of restitution order either by signing plea agreement or by remaining silent at plea hearing). Certainly, "[i]n the absence of an obligation to speak, we cannot find a waiver from silence." *Id.* ¶ 11. On the other hand, we have found that silence amounted to a waiver in certain circumstances that created "great potential for sandbagging the trial court." *In re Cardinal*, 162 Vt. 418, 421, 649 A.2d 227, 230 (1994) (holding that defendant waived his right to be present during voir dire where he failed to notify court that he could not see and hear individual voir dire proceedings taking place at bench); see also *State v. Nguyen*, 173 Vt. 598, 600, 795 A.2d 538, 541 (2002) (mem.) (concluding that "defendant's failure to raise his inability to understand the proceedings, coupled with his counsel's explicit representation that no interpreter was needed for arraignment, was a waiver under *Cardinal*").

■ ¶ 10. Even when we have found that silence amounted to a waiver, we have at times implied that the waiver did not preclude a plain-error argument on appeal. See *Nguyen*, 173 Vt. at 600, 795 A.2d at 542 (finding waiver under *Cardinal*, but then addressing defendant's plain-error arguments after concluding that "we can reverse only for plain error"); see also *State v. Koveos*, 169 Vt. 62, 73, 732 A.2d 722, 730 (1999) (concluding that, by agreeing to use of child victim's deposition testimony at trial, defendant waived his right to argue that admission of deposition testimony violated his constitutional confrontation rights, and further concluding that there was no plain error "[a]ssuming that plain error review is available"). But see *State v. Spooner*, 2010 VT 75, ¶ 23, 188 Vt. 356, 8 A.3d 469 (concluding that "defendant cannot now claim error regarding the course of action he impliedly, if not explicitly, agreed to, and there is therefore no basis for finding plain error"). Further, we allow plain-error review on direct appeal in an analogous situation where a defendant is claiming that the court failed to satisfy the criteria of Vermont Rule of Criminal Procedure 11 before accepting a plea. See *State v. Marku*, 2004 VT 31, ¶ 22, 176 Vt. 607, 850 A.2d 993 (mem.) (noting that defendant objecting to error during plea colloquy may obtain reversal "upon a showing of plain error").

■ ¶ 11. Given the circumstances here, we decline to preclude defendant's plain-error arguments. At the sentencing hearing, the court "gather[ed]" that the parties had "at least implicitly" agreed

to "recommended" special probation conditions appended to the PSI report. Thus, as the court acknowledged, at that point the special conditions were mere recommendations to which the parties had only impliedly agreed at best. Neither defendant nor his counsel responded, let alone assented, to the court's statement. Although the conditions apparently were appended to the plea agreement, the agreement did not actually mention the conditions. Moreover, the copies of the order containing the probation conditions included in the record on appeal are signed by the trial court, but no copy of the order is signed by defendant or his probation officer. On this record, we will not presume a waiver that precludes defendant's plain-error arguments.

¶ 12. This conclusion is particularly appropriate in a case such as this involving probation conditions because of our previous holding that " 'a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order.' " *State v. Amidon*, 2010 VT 46A, ¶ 9, 188 Vt. 617, 8 A.3d 1050 (mem.) (quoting *State v. Austin*, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996)). Because this is defendant's only opportunity to challenge the condition, we will not preclude his plain-error arguments based on an implied waiver.

¶ 13. Defendant's first argument is that condition 38 must be vacated because it violates his due process rights by requiring him to agree to the admission of polygraph results at any future revocation proceeding. The problem with this argument is that its premise is incorrect — condition 38 does not require defendant to agree to admission of polygraph results at any future probation revocation proceeding. The challenged portion of the condition states that the polygraph examinations "will be used to determine your compliance with supervision and treatment requirements." This statement indicates only that the polygraph examinations will be used as an investigative tool to determine whether defendant is remaining in compliance with other probation conditions. There is no explicit or implicit requirement that defendant agree to admission of polygraph results in any future revocation proceeding, and thus we do not address whether in fact such evidence would be admissible in probation revocation proceedings.

¶ 14. The fact that the challenged condition is not what defendant claims it to be is best illustrated by examining *Carswell v.*

*State*, 721 N.E.2d 1255 (Ind. Ct. App. 1999). In *Carswell*, the defendant challenged several probation conditions, including one that: (1) required him to submit to a lie detector test "to determine personal drug and/or alcohol use and your knowledge of drug trafficking"; and (2) provided that positive test results "may be used against you in a court proceeding and will constitute a violation of your probation." *Id.* at 1264 (quotations omitted). The court concluded that "[a]lthough a condition requiring [the defendant] to submit to a polygraph examination is appropriate, a trial court cannot coerce a defendant to agree to the admissibility of evidence that otherwise would be inadmissible because it has not been found to be scientifically reliable." *Id.* at 1265 (quotations omitted). Accordingly, the court struck only that part of the condition making the polygraph results admissible in a later court proceeding. The portion of the condition that is essentially identical to the challenged condition here was left intact. Defendant's plain-error argument with respect to condition 38 is unavailing.

■ ¶ 15. Defendant's second argument is that condition 40 must be vacated because it is not reasonably related to his offenses and is overbroad and unduly restrictive. We agree that the condition is plainly overbroad and unduly restrictive given the lack of findings tying the broad condition to the offenses for which defendant was convicted.

¶ 16. Condition 40 requires defendant to reside and work where his probation officer approves and not change residence or employment without his probation officer's permission. We reviewed a similar condition in *State v. Moses*, 159 Vt. 294, 618 A.2d 478 (1992). There, the defendant, who had been convicted of kidnapping, elderly abuse, and assault, challenged several probation conditions, including one that required him to reside where his probation officer directed him to reside. We concluded that the condition was "unduly restrictive of the probationer's liberty and autonomy" and was "not fine-tuned to the specific rehabilitative and preventative goals applicable to this case" in that it gave the defendant's probation officer "open-ended authority . . . to create any location-of-residence" requirement that the officer deemed appropriate. *Moses*, 159 Vt. at 300-01, 618 A.2d at 482. We explained that instead of the court "fashioning a specific restriction relating to defendant's choice of residence," the condition effectively "turned over to a probation officer the complete power to determine defendant's residence." *Id.* at 300, 618 A.2d at 481.

¶ 17. The same can be said of the challenged condition in this case. Without any findings indicating the necessity of such a broad condition in this particular case, condition 40 essentially allows the probation officer to dictate where defendant will live and work. "[W]here fundamental rights are involved, special care should be used to avoid overbroad or vague restrictions." *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990) (citing American Bar Association, Standards for Criminal Justice 2d § 18-2.3(e)). We recognize that the trial court has "great discretion in setting conditions of probation," *State v. Bubar*, 146 Vt. 398, 405, 505 A.2d 1197, 1202 (1985), and that defendant is making a plain-error argument in this case. Nevertheless, in light of this Court's previous rejection of a near-identical probation condition in *Moses*, we conclude that the trial court's imposition of this broad special condition without any findings explaining its necessity is plain error. See *Spooner*, 2010 VT 75, ¶ 22 (stating that plain error will be found "where the error is both obvious and strikes at the very heart of the defendant's constitutional rights or results in a miscarriage of justice if we do not recognize it" (quotations omitted)). Accordingly, the condition must be struck and the matter remanded for the court to justify the condition or make it more specific.

*Defendant's sentence is affirmed in all respects except that probation condition 40 is stricken and the matter is remanded to give the criminal division of the superior court an opportunity to justify, revise, or remove the restrictions on defendant's residence and employment consistent with this opinion, and to make findings supporting any such restrictions if the court deems them necessary.*